1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     OSHAY JOHNSON,                           No.  2:15-cv-2269 MCE DB P

12                    Plaintiff,

13            v.                                 ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14     J. BREAD, et al.,

15                    Defendants.

16

17            Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18     action pursuant to 42 U.S.C. § 1983.  Plaintiff alleges defendants violated his Eighth Amendment

19     rights when he was transferred to Pleasant Valley State Prison ("PVSP") and exposed to Valley

20     Fever.  Before the court is defendants' motion to dismiss and their motion to strike plaintiff's sur-

21     reply.  For the reasons set forth below, the undersigned will grant the motion to strike the sur-

22     reply and will recommend defendants' motion to dismiss be granted on the ground that

23     defendants are entitled to qualified immunity.

24                                      **BACKGROUND**

25     **I.      Procedural History**

26            Plaintiff filed his initial complaint here on November 2, 2015.  On screening, the court

27     found plaintiff failed to state any cognizable claims for relief.  (ECF No. 10.)  Plaintiff was

28     provided leave to file an amended complaint.  On August 4, 2016, plaintiff filed a first amended

                                                 1

complaint ("FAC"). (ECF No. 16.) The court found plaintiff stated potentially cognizable Eighth

Amendment claims against defendants Ledesma,[1] Wong, Scavette, Sisto, Yates, and Shannon.

The court further found plaintiff failed to state claims against defendants Schwarzenegger and

Cates. Plaintiff was granted leave to amend his complaint to state claims against those two

defendants. Finally, the court recommended dismissal of the remaining seven defendants against

whom plaintiff had alleged claims unrelated to his Valley Fever-based claims. (ECF No. 17.)

The district judge adopted that recommendation. (ECF No. 21.)

Plaintiff declined to file a second amended complaint. (ECF No. 20.) This case now

proceeds on the Eighth Amendment claims in plaintiff's FAC against defendants Ledesma,

Wong, Scavette, Sisto, Yates, and Shannon.

In 2017, defendants filed a motion to revoke plaintiff's in forma pauperis status. (ECF

No. 32.) The court denied that motion in late 2017 (ECF Nos. 42, 43) and on January 3, 2018,

defendants filed the present motion to dismiss (ECF No. 44). Plaintiff filed an opposition to the

motion (ECF No. 47) and defendants filed a reply (ECF No. 48). On April 9, 2018, plaintiff filed

a sur-reply. (ECF No. 51.) Defendants move to strike that filing. (ECF No. 52.)

## II.     Allegations of the First Amended Complaint

Plaintiff alleges that in July 2008 a decision was made to transfer him from California

State Prison-Solano ("CSP-Solano") to PVSP. At that time, plaintiff had not been exposed to the

disease Valley Fever. Plaintiff had a "committee hearing" where his transfer was discussed.

Plaintiff verbally objected to being transferred to PVSP. Defendant Wong was the chairperson at

the hearing and his recommendation that plaintiff be transferred to PVSP was approved by

defendant Scavette. This recommendation was then forwarded to the Classification Staff

Representative, who plaintiff appears to identify here as defendant Ledesma.

Plaintiff, who is African-American, states that in his appeal of that decision, he provided

evidence showing that African-Americans were particularly susceptible to contracting Valley

Fever. Plaintiff alleges that his appeal of the transfer decision and other communications to defendant

---

[1] In the motion to dismiss, defendants note that plaintiff incorrectly identified this defendant as
"Ledesia" in the FAC. (See ECF No. 44 at 2 n.1.)

1    Sisto, Warden at CSP-Solano, notified Sisto about the risks of transfer to PVSP, but Sisto failed to

2    take any action to stop the transfer.  (FAC at 3-3A to 4-3A (ECF No. 16 at 7-8).)

3         On August 29, 2008, Ledesma approved the transfer to PVSP.  Plaintiff wrote Ledesma to

4    attempt to stop the transfer.  However, Ledesma did not respond until after plaintiff had been

5    transferred.  On September 10, 2008, plaintiff was transferred to PVSP.  (Id.)

6         When he arrived at PVSP, plaintiff had another committee hearing.  He requested a

7    transfer out of PVSP due to the risk of Valley Fever.  That request was denied.  Plaintiff filed an

8    appeal and wrote letters in attempts to be transferred.  (FAC at 5-3A (ECF No. 16 at 9).)

9         In addition to challenging his transfer, plaintiff alleges defendants PVSP Warden Yates

10   and Facility Captain Shannon failed to take measures to protect inmates at PVSP from inhaling

11   airborne dust.[2]  Plaintiff states that he was not provided a breathing mask or other device, and

12   there were no special filters at the facility to reduce dust.  (Id.)

13        In January 2009, plaintiff had flu-like symptoms.  After being diagnosed with the flu,

14   plaintiff continued to suffer "more symptoms of Valley Fever" including weight loss, headaches,

15   and coughing.  Lab work done in March 2009 showed that plaintiff was negative for Valley Fever

16   but that he might need to be re-tested.  Plaintiff was tested again in July 2009.  When he was

17   transferred to the California Medical Facility ("CMF") on September 23, 2009, he had not seen

18   the results and, despite requests for them, has never been provided with them.  (FAC at 6-3A

19   (ECF No. 16 at 10).)

20        For two years while at CMF, plaintiff suffered, on and off, night sweats, headaches, and

21   body aches.  He also developed sleeping problems, breathing complications, chronic back pain,

22   increased knee pain, deterioration of his eye sight, and became ill more often.  (Id.)

23   ////

24   _____

25   [2] Valley Fever is contracted by inhaling an airborne fungus, which is endemic in the soil in
     California's Central Valley.  The risks of Valley Fever have been well-documented in many cases
26   filed in this district.  Currently, the Ninth Circuit Court of Appeals is considering a number of
     related cases by prisoners who contracted Valley Fever when they were incarcerated in prisons in
27   the Central Valley.  Smith v. Schwarzenegger, 137 F. Supp. 3d 1233, 1235-37 (E.D. Cal. 2015)
     (describing Valley Fever risks in the Central Valley), appeal docketed, No. 15-17155 (9th Cir.
28   Oct. 28, 2015).

1    In 2013, plaintiff was informed that he had developed asthma.  He was told it was due to

2    exposure to Valley Fever.  He has been treated for asthma since then.  In 2014, plaintiff was

3    considered for a transfer and was told that because he had been exposed to Valley Fever, he could

4    not be transferred to any prison in the "epidemic zone."  (FAC at 6-3A to 7-3A (ECF No. 16 at

5    10-11).)

6                                  **MOTION TO DISMISS**

7    **I.      Legal Standards**

8         **A. Standard of Review on Motion to Dismiss**

9         Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for

10   "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a

11   complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

12   plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v.

13   Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

14   factual content that allows the court to draw the reasonable inference that the defendant is liable

15   for the misconduct alleged."  Id.  The court must accept as true the allegations of the complaint,

16   Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and construe the pleading

17   in the light most favorable to plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  A pro se

18   complaint must contain more than "naked assertion[s]," "labels and conclusions," or "a formulaic

19   recitation of the elements of a cause of action, supported by mere conclusory statements."  Iqbal,

20   556 U.S. at 678.

21        A motion to dismiss for failure to state a claim should not be granted unless it appears

22   beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

23   entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v.

24   Gibson, 355 U.S. 41, 45-46 (1957)).  Pro se pleadings are held to a less stringent standard than

25   those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curium).

26        The court must give a pro se litigant leave to amend his complaint "unless it determines

27   that the pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith

28   203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Doe v. United States, 58 F.3 494, 497 (9th Cir.

                                            4

1995)).  However, the court's liberal interpretation of a pro se complaint may not supply essential

elements of the claim that were not pled.  Ivey v. Bd. Of Regents of Univ. of Alaska, 673 F.2d

266, 268 (9th Cir. 1982).  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court

"may 'generally consider only allegations contained in the pleadings, exhibits attached to the

complaint, and matters properly subject to judicial notice.'"  Outdoor Media Grp., Inc. v. City of

Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citing Swartz v. KPMG LLP, 476 F.3d 756, 763

(9th Cir. 2007)).

### B.  Eighth Amendment Deliberate Indifference

Under the Eighth Amendment, "prison officials are . . . prohibited from being deliberately

indifferent to policies and practices that expose inmates to a substantial risk of serious harm."

Parsons v. Ryan, 754 F.3d 657, 677 (9th Cir. 2014); see also Farmer v. Brennan, 511 U.S. 825,

847 (1994) (prison official violates Eighth Amendment if he or she knows of a substantial risk of

serious harm to an inmate and fails to take reasonable measures to avoid the harm).  Deliberate

indifference occurs when "[an] official acted or failed to act despite his knowledge of a

substantial risk of serious harm."  Farmer, 511 U.S. at 841.  Thus, a prisoner may state "a cause of

action under the Eighth Amendment by alleging that [prison officials] have, with deliberate

indifference, exposed him to [conditions] that pose an unreasonable risk of serious damage to his

future health."  Helling v. McKinney, 509 U.S. 25, 35 (1993).

"The second step, showing 'deliberate indifference,' involves a two-part inquiry."

Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  "First, the inmate must show that the

prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety."

Id. (quoting Farmer, 511 U.S. at 837).  "This part of [the] inquiry may be satisfied if the inmate

shows that the risk posed by the deprivation is obvious."  Thomas, 611 F.3d at 1150 (citation

omitted).  "Second, the inmate must show that the prison officials had no 'reasonable'

justification for the deprivation, in spite of that risk."  Id. (citing Farmer, 511 U.S. at 844)

("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be

found free from liability if they responded reasonably.").

////

5

### C. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting al—Kidd, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair

1  warning" to the officials that their conduct was unconstitutional).  "[W]here there is no case

2  directly on point, 'existing precedent must have placed the statutory or constitutional question

3  beyond debate.'"  C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al—Kidd,

4  563 U.S. at 740).  An official's subjective beliefs are irrelevant.  Inouye, 504 F.3d at 712.

5  **II.    Analysis**

6       The undersigned does not need to determine whether plaintiff has stated a cognizable

7  claim under the Eighth Amendment.  Rather, due to the unsettled case law concerning Valley

8  Fever in the California federal district courts, as discussed below, the undersigned finds that

9  defendants are entitled to qualified immunity from plaintiff's Eighth Amendment claims.

10      As set out above, an analysis of defendants' entitlement to qualified immunity has two

11  prongs: (1) facts showing a violation of a constitutional right, and (2) that the right was clearly

12  established at the time of defendants' alleged misconduct.  Because the court finds the second

13  prong is not satisfied, it need not reach the first.  See Pearson, 555 U.S. at 236.

14      **A.  Claim Challenging Transfer to PVSP**

15       Plaintiff's first claim is that defendants Wong, Scavette, Ledesma, and Sisto were

16  deliberately indifferent to plaintiff's health when they approved his transfer to PVSP.  To

17  determine whether they are entitled to qualified immunity, the first question is whether in 2008

18  and 2009 African-American inmates had an Eighth Amendment right not to be incarcerated in a

19  Valley Fever endemic area.  Second, was that right "sufficiently clear" that "every reasonable

20  official would have understood that what he is doing violates that right."  Lal v. California, 746

21  F.3d 1112, 1116 (9th Cir. 2014).

22      Most courts have found defendants are entitled to qualified immunity in similar cases

23  because there was then, and is now, an absence of a clearly established right that would support a

24  finding that any defendant had a sufficiently culpable state of mind.  However, a few courts have

25  found qualified immunity inappropriate at the screening or motion to dismiss stages.  The court

26  considers both sets of cases below.

27  ////

28  ////

7

## 1. Courts Finding Qualified Immunity Appropriate

In 2017, Judge Gonzalez Rogers examined the case law prior to 2014 to determine whether it was "beyond debate" that transferring an inmate who may have susceptibility to Valley Fever to a prison in an endemic area would violate the Eighth Amendment. Franklin v. Giurbino, No. 15-cv-4755-YGR (PR), 2017 WL 24862, at *5 (N.D. Cal. Jan. 3, 2017). She found numerous unpublished district court decisions holding that such confinement in an endemic area failed to state an Eighth Amendment claim. Id. (collecting cases). Based on these numerous cases, the defendants did not have fair notice that their decision to house the plaintiff in an endemic area violated the Eighth Amendment. Id. Many other judges have similarly held. See, e.g., Price v. Lamb, No. 2:17-cv-0099 TLN KJN P, 2018 WL 1071182, at *5-6 (E.D. Cal. Feb. 23, 2018) (rep. and reco. pending before district judge as of July 16, 2018);[3] Gregge v. Kate, No. 1:15-cv-0176-LJO-SAB, 2015 WL 2448679, at *10 (E.D. Cal. May 20, 2015) (collecting cases), rep. and reco. adopted, No. 1:15-cv-0176 (E.D. Cal. Oct. 7, 2015).

The most notable case is Smith v. Schwarzenegger, 137 F. Supp. 3d 1233 (E.D. Cal. 2015), a consolidated class action, which is presently on appeal in the Ninth Circuit, No. 15-17155. In Smith v. Schwarzenegger, Judge O'Neill found defendants entitled to qualified immunity "because the applicable law remains unsettled and unclear," despite prisoner allegations of individual susceptibility to contracting Valley Fever because of ethnicity, compromised immune systems, or advanced age. 137 F. Supp. 3d at 1241; accord Williams v. Hill, No. 1:16-cv-0540-LJO-EPG, 2017 WL 1494610, at *7 (E.D. Cal. Apr. 26, 2017); Boyce v. Fox, No. 2:14-cv-1743 KJM KJN P, 2017 WL 404589, at *12 (E.D. Cal. Jan. 30, 2017), rep. and reco. adopted, 2017 WL 896337 (E.D. Cal. Mar. 7, 2017); Cunningham v. Kramer, 178 F. Supp. 3d 999, 1005 (E.D. Cal. 2016) ("The Court finds no Supreme Court or published Ninth Circuit case determining whether an inmate's environmental exposure to Valley Fever or other environmental organism would be a violation of the Eighth Amendment," and noting that

---

[3] Magistrate Judge Newman issued similar findings and recommendation in this plaintiff's related case against other defendants. See Price v. C&PR, 2:17-cv-382 TLN KJN P, 2018 WL 1071211 (E.D. Cal. Feb. 26, 2018) (rep. and reco. pending before district judge as of July 16, 2018).

defendants would be entitled to qualified immunity on a claim that defendants housed inmates in a prison located in an area endemic for Valley Fever).

In particular, where the prisoner's only risk factor is his or her ethnicity, courts have almost unanimously found either that the prisoner failed to state an Eighth Amendment claim or that qualified immunity was appropriate. See Boyce, 2017 WL 404589, at *12 ("[I]t was not clearly established in 2014 that housing African American prisoners at hyperendemic institutions violated their Eighth Amendment rights."); Franklin, 2017 WL 24862, at *5 (recognizing that "judges have disagreed as to whether allegations that an inmate's ethnicity increases the risk of contracting Valley Fever and developing disseminating Valley Fever[4] states an Eighth Amendment claim" (footnote omitted)); Smith v. Brown, No. 1:12-cv-0238-AWI-JLT (PC), 2012 WL 1574651, at *4 (E.D. Cal. May 3, 2012) (allegation that African-American inmate at greater risk of contracting Valley Fever is insufficient to state a claim); Clark v. Igbinosa, No. 1:10–cv–01336–DLB PC, 2011 WL 1043868, at *2 (E.D. Cal. Mar. 21, 2011) (same); Jones v. Igbinosa, No. 1:08-cv-0163 LJO SKO PC, 2010 WL 2838617, at *3-4 (E.D. Cal. July 19, 2010) (same), rep. and reco. adopted, No. 1:08-cv-0163 (E.D. Cal. Sept. 14, 2010), aff'd, 467 F. App'x 604 (9th Cir. Jan. 25, 2012).

### 2. Courts Finding Qualified Immunity Inappropriate

A few courts have identified the constitutional right at issue in a less fact-specific context and allowed the inmate's Eighth Amendment claim to proceed. In Allen, an African-American prisoner was housed at PVSP but had not yet contracted Valley Fever. Allen v. Kramer, No. 1:15-cv-1609-DAD-MJS (PC), 2016 WL 4613360 (E.D. Cal. Aug. 17, 2016). On screening, the magistrate judge evaluated the defendants' potential qualified immunity defense, identifying the constitutional right as: "Plaintiff has a right to be free from exposure to an environmental hazard that poses an unreasonable risk of serious damage to his health whether because the levels of that

---

[4] When Valley Fever spreads beyond the lungs to other parts of the body, it is referred to as the "disseminated" or "disseminating" form of the disease. See Smith v. Schwarzenegger, 137 F. Supp. 3d at 1235. The disseminated form of the disease "can cause serious, life-long health complications, and even death. Id.

9

environmental hazard are too high for anyone in plaintiff's situation or because plaintiff has a particular susceptibility to the hazard." Id. at *12. The judge found that "the serious risk of Valley Fever to human health is uncontroverted," and refused to dismiss the case on qualified immunity grounds at the screening stage. Id.; see also Williams v. Biter, No. 1:14-cv-2076-DAD-EPG (PC), 2017 WL 431353 (E.D. Cal. Jan. 31, 2017) (magistrate judge adopts the reasoning of Allen, and finds that, where African-American inmate with hepatitis C alleged exposure to an environmental hazard posing an unreasonable risk of serious damage to his health, and alleged defendants were aware of the risk yet did nothing to remedy it, defendants were not entitled to dismissal based on qualified immunity) (rep. and reco. pending before district judge as of July 16, 2018).

Another district judge declined to address the issue of qualified immunity at the pleading stage, noting that "a number of recent Ninth Circuit opinions have suggested [that] dismissal of these types of cases on qualified immunity grounds before defendants are required to file an answer is premature in a case where the prisoner had a history of chronic asthma and viral hepatitis C, and contracted Valley Fever while housed at PVSP in 2010. Shabazz v. Beard, No. 1:15-cv-0881-DAD-EPG, 2017 WL 735749 (E.D. Cal. Feb. 23, 2017) (citing Sullivan v. Kramer, 609 F. App'x 435 (9th Cir. 2015); Samuels v. Ahlin, 584 F. App'x 636 (9th Cir. 2014); and Johnson v. Pleasant Valley State Prison, 505 F. App'x 631 (9th Cir. 2013)); but see Jones v. Igbinosa, 467 F. App'x 604 (9th Cir. 2012) (affirming dismissal at screening stage of complaint alleging susceptibility to Valley Fever based on ethnicity). However, other district judges have refused to follow those unpublished Ninth Circuit opinions and held that allegations regarding Valley Fever fail on qualified immunity grounds. See Cunningham, 178 F. Supp. 3d at 1003 (citing Smith v. California, No. 1:13-cv-0869 AWI SKO (PC), 2016 WL 398766 (E.D. Cal. Feb. 2, 2016)); Gregge, 2015 WL 2448679, at *9.

The court does not find these few cases persuasive. The Ninth Circuit has been clear that determining whether the law was clearly established requires consideration of "the specific context of the case, not as a broad general proposition." Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted). While "closely analogous preexisting case law is not required to

10

show that a right was clearly established," "there must be some parallel or comparable factual pattern." Clairmont, 632 F.3d at 1109. Defendants must have had some fair warning that their conduct was unlawful. Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1136–37 (9th Cir. 2003).

### 3. Absence of Clearly Established Law

The majority of judges have held that "it was not 'beyond debate' that there was a clearly established right" in 2008 and 2009 "for Plaintiff not to be housed in . . . areas with a prevalence of Valley Fever spores." Franklin, 2017 WL 24862, at *6; see also King v. Avenal State Prison, No. 1:07-cv-1283 AWI GSA (PC), 2009 WL 546212, at * 4 ("no courts have held that exposure to Valley Fever spores presents an excessive risk to inmate health"). This is particularly true where, as here, the only risk factor identified was plaintiff's ethnicity. Allen is the only case this court has found in which a prisoner was permitted to proceed where his sole risk factor was his ethnicity.

Further, the fact that different courts have arrived at different conclusions about the validity of a claim such as plaintiff's establishes that the law was not clearly established. In 2008 and 2009, it was not beyond debate that if you were an inmate susceptible to Valley Fever based solely on your ethnicity, there was a clearly established right not to be housed at a prison located in an area endemic for Valley Fever. There was no published Supreme Court or Ninth Circuit case law that addressed whether an inmate's exposure to Valley Fever would be a violation of the Eighth Amendment.

Moreover, no consensus among district courts has developed despite the substantial litigation in this district. "The law here is underdeveloped and contradictory, and no 'consensus of cases of persuasive authority' exists such that a reasonable officer could" believe the alleged conduct was unlawful. Williams v. Hill, 2017 WL 1494610, at *7 (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)). Because the law was unsettled in 2008 and 2009 and remains unsettled, the undersigned is persuaded that defendants Wong, Scavette, Ledesma, and Sisto are entitled to qualified immunity. "[T]he Court should "not hold prison officials . . . to a higher standard of constitutional clairvoyance than the many federal judges who -- even today -- do not discern a

clearly established constitutional right in similar Valley Fever cases." Jimenez v. Rothchild, No.

15-cv-2493-BAS-AGS, 2017 WL 4675625, at *2 (S.D. Cal. Oct. 18, 2017).

Because they are entitled to qualified immunity from plaintiff's claim that his transfer to

PVSP violated his Eighth Amendment rights, defendants Wong, Scavette, Ledesma, and Sisto

should be dismissed from this action.

### B. Claim Alleging Failure to Mitigate Risk of Valley Fever

In his second claim, plaintiff alleges defendants Yates and Shannon failed to institute

measures at PVSP to reduce the likelihood that inmates would contract Valley Fever.  Again, the

undersigned finds these defendants entitled to qualified immunity based on the lack of any clearly

established duty on their part to undertake such measures.

Some courts who have considered this issue have held that because exposure to Valley

Fever is not "in and of itself an excessive risk to inmate health[,] [d]efendants had no duty to take

steps to reduce the risk." Ayala v. Yates, No. 1:10-cv-0050 MJS (PC), 2011 WL 4527464, at *3

(E.D. Cal. Sept. 28, 2011) (finding plaintiff failed to state an Eighth Amendment claim re

exposure to Valley Fever at PVSP); see also Nawabi v. Cates, No. 1:13-cv-0272-LJO-SAB, 2015

WL 2414682, at *28 n.12 (E.D. Cal. May 20, 2015) (noting that inmates incarcerated at prisons in

the Central Valley are exposed to the same environmental conditions that exist for those non-

incarcerated individuals residing in the same area; "the Court finds no precedent to place

Defendants on notice that they are required to provide inmates with a safer environment tha[n]

that of non-incarcerated individuals residing in the same area."), rep. and reco. adopted, 2015 WL

5915269 (E.D. Cal. Oct. 7, 2015).

As discussed above, other courts have allowed Valley Fever claims to proceed, which

demonstrates the lack of clearly established law on the issue. Compare Allen, 2016 WL 4613360

(finding American inmate states an Eighth Amendment claim for Valley Fever exposure) with

Smith v. Brown, 2012 WL 1574651 (finding African American inmate fails to state an Eight

Amendment claim for Valley Fever exposure). Defendants Yates and Shannon should be entitled

////

////

12

1   to qualified immunity as well.  Because this court finds the final two defendants, Yates and

2   Shannon, should be dismissed from this action, this entire action should be dismissed.[5]

3                                          **MOTION TO STRIKE**

4           On March 26, 2018, plaintiff filed a motion for an extension of time to file a sur-reply.

5   (ECF No. 49.)  Noting that defendants' reply brief did not appear to raise any new theories, the

6   court found a sur-reply unnecessary and denied the motion for an extension of time.  (ECF No.

7   50.)  Nonetheless, on April 9, plaintiff filed a sur-reply.  (ECF No. 51.)  Defendants move to

8   strike it.  (ECF No. 52.)  Plaintiff opposes the motion.  (ECF No. 53.)

9           The Local Rules do not authorize the routine filing of a sur-reply.  E.D. Cal. R. 230(l).  A

10  district court may allow a sur-reply "where a valid reason for such additional briefing exists, such

11  as where the movant raises new arguments in its reply brief."  Hill v. England, No.

12  CVF05869RECTAG, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005); accord Norwood v.

13  Byers, No. 2:09-cv-2929 LKK AC P, 2013 WL 3330643, at *3 (E.D. Cal. July 1, 2013) (granting

14  the motion to strike the sur-reply because "defendants did not raise new arguments in their reply

15  that necessitated additional argument from plaintiff, plaintiff did not seek leave to file a sur-reply

16  before actually filing it, and the arguments in the sur-reply do not alter the analysis below"), rep.

17  and reco. adopted, 2013 WL 5156572 (E.D. Cal. Sept. 12, 2013).

18          Here, nothing about plaintiff's sur-reply or opposition to the motion to strike provides any

19  new basis for the filing of an additional brief.[6]  Thus, the undersigned will grant the motion to

20  strike.

21          Accordingly, IT IS HEREBY ORDERED that defendants' motion to strike the sur-reply

22  (ECF No. 52) is granted.  The Clerk of the Court is directed to strike the sur-reply (ECF No. 51)

23  from the docket.

24  ////

25  _____

    [5] As noted above, the recommendation that defendants be granted qualified immunity obviates the
26  need to address the alternative argument that plaintiff's complaint be dismissed for failure to state
    a claim for relief.
27
    [6] Even if the court considered plaintiff's sur-reply, the arguments raised in it do not alter the
28  court's analysis on the issue of qualified immunity.

                                                    13

1      Further, IT IS RECOMMENDED that defendants' motion to dismiss (ECF No. 44) be

2  granted on the grounds that defendants are entitled to qualified immunity.

3      These findings and recommendations will be submitted to the United States District Judge

4  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

5  after being served with these findings and recommendations, either party may file written

6  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

7  Findings and Recommendations."  The parties are advised that failure to file objections within the

8  specified time may result in waiver of the right to appeal the district court's order.  <u>Martinez v.</u>

9  <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

10  Dated:  July 17, 2018

11

12  _____

13  DEBORAH BARNES
    UNITED STATES MAGISTRATE JUDGE

14

15

16

17  DLB:9
    DLB1/prisoner-civil rights/john2269.mtd2
18

19

20

21

22

23

24

25

26

27

28